Sandra E. Portney, State Bar No. 018881
Peter J. Foster, State Bar No. 026242
**WARNER ANGLE HALLAM**
 **JACKSON & FORMANEK PLC**
2555 East Camelback Rd., Suite 800
Phoenix, Arizona 85016
Telephone: (602) 264-7101
E-mail:   sportney@warnerangle.com
              pfoster@warnerangle.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eastern Industries, LLC, a New York limited liability company,<br><br>                              Plaintiff,<br><br>    v.<br><br>EarthCo Enterprises, LLC, an Arizona limited liability company; Thomas Vella and Jane Doe Vella, husband and wife, Wesley Zlotoff and Jane Doe Zlotoff, husband and wife; Dominic Riccobono and Jane Doe Riccobano, husband and wife, and Jack Thomas Riccobono and Jane Roe Riccobono, husband and wife, Scott Williams and Jane Doe Williams, husband and wife,<br><br>                              Defendants. | Case No. 2:23-cv-00109<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS**<br><br>(Oral Argument Requested) |

Plaintiff has failed to meet its burden of demonstrating a genuine factual dispute to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.) Most significantly, Plaintiff has failed to produce competent evidence of damages actually resulting from any of the alleged acts or omissions of

Defendants. Even the new and belatedly disclosed damage theories set forth in Plaintiff's sham affidavits do not move the needle enough to meet Plaintiff's burden to avoid summary judgment.

**(1) Defendants object to Plaintiff's damages theories not disclosed pursuant to Rule 26(a).**

Rule 26(a)(1)(A)(iii) requires the disclosure of "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The intention of this preclusionary measure is to prevent the practice of 'sandbagging' an opposing party with new evidence, and it applies on motions for summary judgment." *Hooks* v. *Forman Holt Eliades & Ravin LLC*, No. 11 Civ. 2767 (LAP), 2015 WL 5333513, at *4 (S.D.N.Y. Sept. 14, 2015).

Here, throughout the course of this nearly <u>four</u> year old lawsuit, Plaintiff has asserted only two measures of damages in its Rule 26(a) disclosures: (1) $400,633.12 in costs incurred growing the hemp and transporting it to Arizona; and (2) "expectancy" damages of 50% of the revenue for sale of all the hemp products from between $1,500 and $2,500 per kilogram. [SOF 13.] Now, almost four years in, and with discovery closed, Plaintiff attempts to significantly expand its damage theories to avoid summary judgment. For the first time in this lawsuit, Plaintiff now claims these new categories of damages: (1) The $1 million to $1.5 million that Plaintiff claims it "could and would have" generated by selling the 2019 crop instead of entering into the Joint Venture Agreement; (2) restitution of between $1,763,250 and $2,938,750, measured as the "value of the inventory

Warner Angle Hallam Jackson & Formanek PLC

Warner Angle Hallam Jackson & Formanek PLC

EarthCo possesses but has refused to either sell or return" based on "prices the parties themselves set in the [Joint Venture Agreement]; (3) consequential damages in unspecified amounts relating to the loss of a "Muffin Town hemp protein bar product line," a planned 50 acre expansion of Plaintiff's farming operation, the loss of Plaintiff's friend's investment of approximately $300,000 into a "hemp-product line" that "fell apart," 205 kg of CBD "diversion" allegedly resulting from Defendants' processing of the biomass that Plaintiff contributed to the Joint Venture, and "six years of interest on the unpaid contract value." [*See* Plaintiff's Converting Statement of Facts ("**CSOF**") at ¶¶ 13, 42, 49.]

Incredibly, Plaintiff does not even attempt to explain its belated disclosure of these new damage categories. No justification is provided whatsoever. Defendants object to this untimely information and request that Plaintiff be precluded from pursuing these undisclosed damage theories. Fed. R. Civ. P. 37(c)(1). In the case of *In re Gorilla Companies, LLC*, 454 B.R. 115, 119–20 (D. Ariz. 2011), *amended on reh'g in part sub nom. In re Gorilla Companies LLC*, No. AP-09-00266-RJH, 2011 WL 2357825 (D. Ariz. June 14, 2011), Judge David Campbell addressed the failure of the plaintiff to disclose a lost profit damages calculation in a proceeding previously held before the Bankruptcy Court. *See id*. On appeal to the United States District Court for the District of Arizona, Judge Campbell reversed the Bankruptcy Court's award of damages. *See id*. Judge Campbell wrote:

> Nor can it be said that the nondisclosure was harmless. Disclosing a computation of damages under Rule 26(a)(1) is necessary for the opposing party to produce responding evidence, such as an expert opinion. Corwin never had an opportunity to prepare and present evidence in opposition to Gorilla's lost profits computation because that computation was not disclosed as the rules require. And because the disclosure obligation is automatic—the functional equivalent of court-order interrogatories— Gorilla's actions cannot be justified because Corwin failed to request the computation before trial or failed to move in limine to preclude Gorilla from presenting evidence that Rule 37(c) already precluded. The Court concludes that it was an abuse of discretion to permit Gorilla to present evidence of damages that had never been disclosed as required by Rule 26(a)(1).

Warner Angle Hallam Jackson & Formanek PLC

*Id.*

Here, given how much time has elapsed since this case was filed, Defendants would be prejudiced if the Court were to excuse Plaintiff's delayed disclosure and reopen discovery to allow Defendants to address the new theories. *See e.g., Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 266 (S.D.N.Y. 2016) (rejecting a continuance to address belatedly disclosed information in a three year old case on the grounds that such a continuance would constitute an unwarranted delay.)

### (2) Plaintiff has failed to produce competent evidence of damages for any of its claims.

Setting aside the nondisclosure issue, Plaintiff has produced woefully insufficient evidence to support any of its damages theories – old or new. Indeed, no reasonable jury could return a verdict for Plaintiff on any of its remaining claims because there is insufficient evidence of resulting damages, an essential element of all remaining claims. "[T]here is no genuine issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249. "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context renders [the nonmoving party's] claims implausible… [that party] must offer more persuasive evidence to support their claims than would otherwise be necessary.". *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

> 1. Plaintiff has not met its burden to prove with reasonable certainty that any, let alone all, of its hemp could have been sold.

Here, pursuant to the Joint Venture Agreement, if sales revenues were generated from the sale of Hemp113 made with Plaintiff's hemp, the parties to the Joint Venture

Agreement would split the revenues 50/50. [See Second Amended Complaint, Exhibit A (Doc 43-1) at ¶ 5.] Ignoring the very nature of the Joint Venture Agreement, Plaintiff incorrectly argues that Plaintiff's risk under the Joint Venture Agreement ended when it delivered hemp to Defendants' processing facility. [*See* CSOF at Exhibit 1, ¶ 49.] This twisted view of the Joint Venture Agreement is perhaps the best explanation for why Plaintiff has insisted on litigating this case for four years on the shakiest of grounds. To state the obvious, if Plaintiff's risk under the Joint Venture Agreement ended when it delivered the hemp, the contract would have been a Purchase Agreement, not a Joint Venture Agreement.

Plaintiff's main damage calculation relies on the idea that Plaintiff's damages are equal to all the hemp Plaintiff contributed to the Joint Venture multiplied by the prices the parties hoped to realize through their Joint Venture efforts. This "pie in the sky" damage claim – and all causes of action that rely on it – cannot survive summary judgment. In its response, Plaintiff encourages the Court to conclude that the *Rancho Pescado* case helps Plaintiff with this lost profits' damages issue. It does not.

In *Rancho Pescado*, the plaintiff was engaged in the business of commercial catfish farming. *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 177–78, 680 P.2d 1235, 1238–39 (Ct. App. 1984). The plaintiff filed a complaint for damages, including loss of future profits, alleging that the defendant had breached a license agreement to permit plaintiff to use defendant's canal to raise catfish. *Id.* At trial, the jury awarded $2,500,000 to the plaintiff. *Id.* After trial, the Superior Court granted the defendant's motion for judgment notwithstanding the verdict and reduced the amount of damages to $101,510 plus attorneys' fees. *Id.* The reduction damages represented the amount of damages awarded for loss of future profits. *Id.* On appeal, the appellate court affirmed the trial court's decision to eliminate the jury's award for future profits. *Id.* at 186, 680 P.2d at 1247.

In affirming the lower court, the *Rancho Pescado* court reiterated the "generally accepted rule of contract law that damages are not recoverable unless they are reasonably

*Warner Angle Hallam Jackson & Formanek PLC*

Warner Angle Hallam Jackson & Formanek PLC

certain." *Id.* at 183, 680 P.2d at 1244 (internal citations omitted). The *Rancho Pescado* court noted that "[t]he modern trend is to allow recovery for such lost profits if they can be proven with reasonable certainty." *Id.* at 183, 680 P.2d at 1244. The court noted that "[i]n determining whether a plaintiff has met its burden of proof, courts have considered the profit history from a similar business operated by the plaintiff at a different location… and the profit history from the business in question if it was successfully operated by someone else before the plaintiff took over. *Id.* at 184, 680 P.2d at 1245 (internal citations omitted). In *Rancho Pescado*, neither of those methods were available. *Id*. Nonetheless, the *Rancho Pescado* court explained that "as is the case with an established business, reasonable certainty may be provided when the plaintiff devises some reasonable method of computing his net loss." *Id.*

The *Rancho Pescado* court noted that the plaintiff "had the burden of proving with reasonable certainty the fact that it could raise catfish in the canal and that it could thereafter market them at a profit as well as proving with reasonable certainty how much profit it would have realized." *Id.* at 184-85, 680 P.2d at 1245-46. On appeal, the plaintiff "maintained it had met its burden on all accounts with uncontroverted evidence that it could successfully raise and market fifteen million pounds of channel catfish per year at a profit of twenty-five to thirty cents per pound." *Id.* at 185, 680 P.2d at 1246. The *Rancho Pescado* court disagreed. *Id.* at 185-86, 680 P.2d at 1246-47.

In explaining how the plaintiff failed to meet its burden, the *Rancho Pescado* court noted that "various experts testified that catfish farming is an extremely risky business, even for experienced farmers." *Id.* at 185, 680 P.2d at 1246. The court also noted that testimony from "various experts in predicting Rancho Pescado's success or failure" had been presented. *Id*. One expert "believed additional development work had to be completed before [Plaintiff] could successfully raise fish in the canal." *Id*. Beyond the issue of whether the plaintiff could even successfully raise fish in the canal, there was also the issue of whether the plaintiff could successfully market and sell the fish it raised. *Id*. On that issue,

Warner Angle Hallam Jackson & Formanek PLC

the *Rancho Pescado* court found that it was not reasonably certain that all of Plaintiff's projected yearly production of eight million pounds of fish could have been sold. *See id.*

The *Rancho Pescado* court concluded that the plaintiff's evidence was "nothing more than conjecture and speculation." *Id.* at 186, 680 P.2d at 1247. The *Rancho Pescado* court summarized the situation as follows: "The picture which emerges is one of an intelligent and enterprising individual who had an ambitious idea to take advantage of existing waterways to raise and sell catfish. However, the evidence is insufficient to prove that he would have succeeded in this highly risky industry." *Id.* The *Rancho Pescado* court continued: "[p]erhaps most damaging to [plaintiff's] case is the lack of any conclusive evidence that it could have successfully marketed such large quantities of catfish. It is well settled that conjecture or speculation cannot provide the basis for an award of damages. The evidence must make an approximately accurate estimate possible." *Id.*

The instant case is no different from the situation in *Rancho Pescado*. Here, Plaintiff has no track record of selling anything, let alone hemp. [SOF ¶ 1, 7, 8.] Rather than try to sell its hemp, Plaintiff elected to contribute it to the Joint Venture, hoping to cash in. Plaintiff's "expectancy" measure of damages distorts the nature of the Joint Venture Agreement, asking to be compensated with money damages for the entire amount of its harvest. Plaintiff lacks any conclusive evidence that its entire harvest could have successfully been marketed and sold. Indeed, the record in this case demonstrates the exact opposite.

Defendants have produced uncontroverted evidence – affidavit testimony and deposition testimony – that they never sold any Hemp113 made from Plaintiff's hemp. [SOF ¶ 23, 26.] Defendants have also produced uncontroverted evidence of the extensive marketing and financial efforts they undertook, to no avail, to try to make the Joint Venture a success. [Zlotoff deposition, attached hereto as Exhibit A, 49:11-50:21; 56:14-57:7; 60:15-61:5; 92:3-18; 142:21-143:21; 152:25-153:15.] Ultimately, despite everyone's efforts, the business failed. Even the relatively small 150 kilogram Taiyo order that

materialized two years later was made with someone else's hemp, not Plaintiff's. [Zlotoff deposition, attached hereto as Exhibit A, 104:8-105:10; 107:10-108:19; 111:13-22.]

Plaintiff admits it is not entitled to revenues generated from the sale of other farmers' hemp. [SOF at Exhibit 2 at 128:10-19 (Q. Are you making a claim in this case that Eastern is entitled to revenues generated from the sale of other farmers' hemp? A. No, we're not entitled to any other farmers' but our own. Q. And you knew that EarthCo was sourcing hemp from other farmers? A. One other farmer I knew of in 2019. Q. Was that the farmer in Oregon? A. Yes.)]. Undeterred, in its Response, Plaintiff argues that the Taiyo invoice is proof that "EarthCo had real customers buying real Hemp 113 powder at documented prices." [Response 8:16-17]. Plaintiff then extrapolates on this point to claim that it is entitled to damages equal to its entire hemp crop at the rates set forth in the Taiyo invoice. [*Id.*] Plaintiff ignores the fact that the Taiyo invoice was for a mere 150 kilograms of hemp powder. [*See* CSOF, Exhibit 8 at bates PLAINTIFF 000143.] The hemp biomass that Plaintiff contributed to the Joint Venture was processed into 2,351 kilograms of hemp powder. [*See* SOF at Exhibit 4 (Plaintiff "holds an inventory count of 2,351 Kilograms of finished hemp powder … which was produced from the initial allocation of raw biomass supplied")]. The sale to Taiyo of a mere 150 kilograms of someone else's hemp powder – two years after the Joint Venture Agreement was signed – does not prove that all of Plaintiff's hemp powder could or should have been sold. Quite the opposite. It would be like if the plaintiff in *Rancho Pescado* had argued that it can prove it would have sold eight million pounds of catfish simply because it once sold 1,000 pounds of salmon.

2. Plaintiff has not met its burden to prove its entitlement to $400,633.12 in "reliance" damages.

Plaintiff fails to address the admitted fact that the lion's share of the $400,633.12 allegedly spent growing the hemp was incurred before Plaintiff was even introduced to Defendants. [SOF ¶ 11, 14, 15.] Plaintiff only musters the argument that it incurred "transportation" costs and that it "foreclosed" various "documented alternatives" for its

Warner Angle Hallam Jackson & Formanek PLC

Warner Angle Hallam Jackson & Formanek PLC

2019 hemp crop. [Response 8:27-9:1.] Of course, Plaintiff has never disclosed any documented alternatives. Plaintiff never timely disclosed any damages computation about other options it had for its 2019 crop. Plaintiff never disclosed anything – no generalities, no details – about opportunities to sell the 2019 crop. [SOF ¶ 12.] During Plaintiff's deposition, it was clear that Plaintiff could not provide any such details. [*Id*.] Like *Rancho Pescado,* Plaintiff's "evidence" is nothing more than self-serving conjecture and speculation. It simply does not get Plaintiff over the hurdle to avoid summary judgment.

> 3. <u>Even looking past the nondisclosure issue, Plaintiff's other damages theories are not supported with evidence that demonstrates damages with reasonable certainty.</u>

Plaintiff provides no calculations underlying its various newly disclosed consequential damages theories. Plaintiff provides no documents. Instead, Plaintiff just muses about damages in unspecified amounts relating to the loss of a "Muffin Town hemp protein bar product line," a planned 50 acre expansion of Plaintiff's farming operation, the loss of Plaintiff's <u>friend's</u> investment of approximately $300,000 into a "hemp-product line" that "fell apart," 205 kg of CBD "diversion" allegedly resulting from Defendants' processing of the biomass that Plaintiff contributed to the Joint Venture, and "six years of interest on the unpaid contract value." These unsupported and belated damage categories – even if considered – do not get Plaintiff over the hurdle to avoid summary judgment. "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation." *British Airways Board,* 585 F.2d at 952.

**(3) Plaintiff has offered no evidence of damages actually resulting from the patent issue, the GAAP- quarterly accounting issue, the GRAS issues, the alleged lab failures, or any of the other "breaches" or "misrepresentations" that Plaintiff alleges in this case.**

Plaintiff asserts that Defendants falsely represented that they had patented technology. [*See* Response at page 5:23- 6:11.] Oddly, Plaintiff also writes that "Defendants' SOF ¶ 4 and 6 attempt to rewrite the contract to substitute the word 'proprietary', a softer term [than patented]." [*See* Response at page 6:7-8.] First, Defendants' SOF ¶ 4 and 6 merely cite to Plaintiff's own deposition testimony. Plaintiff used the word "proprietary." Second, as Plaintiff admits in CSOF ¶ 38, Defendants <u>did</u> have patented technology for turning biomass into powder. Defendant Zlotoff explained it during his deposition:

18· · · Q.· ·What did it mean -- what does that clause mean by
19· "patented technology"?
20· · · · · · · · MR. FOSTER:· Form.· Foundation.
21· · · · · · · · THE WITNESS:· Like, Tom had -- he had the
22· rights to produce products using like a low heat process
23· that would process the powder without, like, disrupting
24· the actual plant nature.
8· · · Q.· ·Did Thomas Vella personally own that patent?
·9· · · A.· ·Yeah.

[Zlotoff deposition, attached hereto as Exhibit A, 47:18-48-9.]

Even if the statement about having patented technology is actionable (it is not), Plaintiff has failed to show damages resulting therefrom. Did the parties lose out on sales because Defendants did not have a patent specifically related to hemp? There is no evidence of this. Similarly, what damage does Plaintiff claim from the alleged lack of GAAP-quarterly accounting or the statement about GRAS? Plaintiff has never provided a calculation. As noted above, damages cannot be based on conjecture or speculation.

Likewise, Plaintiff argues that Defendants breached their fiduciary duties by sourcing hemp from other farmers. But, as noted above, Plaintiff knew about other farmers, and Plaintiff is not making a claim to any revenues generated from other farmers' hemp. [SOF at Exhibit 2 at 128:10-19] The fiduciary duty claim is subject to summary judgment for the same reason as the others. Plaintiff has not produced evidence to show resulting damages with reasonable certainty. Plaintiff cannot ask the jury to use conjecture or

Warner Angle Hallam Jackson & Formanek PLC

speculation to determine how much revenue Plaintiff lost because of these alleged breaches. It was Plaintiff's burden to show damages reasonably attributable to its claims. Plaintiff failed to meet that burden.

**(4) The Zlotoff Declaration is perfectly admissible, and the issue is a red herring that distracts from the merits of the summary judgment motion.**

Plaintiff takes issue with certain statements in Mr. Zlotoff's declaration that is attached to the SOF as "Exhibit 1." Plaintiff notes that Mr. Zlotoff states he is "unaware" of any evidence produced by Plaintiff. Plaintiff also takes issue with Mr. Zlotoff declaring his "understanding" of certain facts. On this last point, the "it is my understanding" language of paragraphs 6 and 9 is superfluous. Every declaration is a declarant's understanding. With respect to the "unaware" language, the intent was merely to demonstrate that the Defendants are unaware of any evidence in this case that supports Plaintiff's positions.  Defendants could have simply made that argument in the summary judgment papers without the sworn statement of Mr. Zlotoff. Nonetheless, the statement is true and, per the rules governing summary judgment, shifts the burden to Plaintiff to produce evidence.

**(5) Rule 56(d) relief is not warranted.**

Rule 56(d) allows the Court to defer ruling on a motion for summary judgment and allow additional discovery time or issue any other appropriate order if a nonmovant shows by affidavit that for specific reasons it cannot present facts to justify its opposition. Rule 56(d) relief must be (1) timely made, and (2) specifically identifies relevant information where there is some basis for believing that the information sought actually exists. *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986). The facts intended to be discovered must be specifically identified and be facts likely to be discovered and essential to the party's argument. *See Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018). Mere speculation is insufficient to satisfy this rule. *Id.*

Warner Angle Hallam Jackson & Formanek PLC

Warner Angle Hallam Jackson & Formanek PLC

Here Plaintiff argues that it did not receive subpoena production from several banks due to objections and procedural wrangling that followed. Plaintiff argues that the records are essential to tracing the proceeds of the Taiyo Purchase and other wire payments. However, it's unclear what facts Plaintiff intends to use this evidence to support or how this information is essential to Plaintiff's argument. The evidence sought relates to Defendant Vella and Defendant Zlotoff's personal banking records, which Plaintiff argues is necessary to "tracing the proceeds" of certain transactions. However, it is unclear how these records or "tracing the proceeds" from sales/transactions would help bolster any argument in opposition to summary judgment. The 56(d) request should be denied.

**(6) Conclusion**

For all the reasons stated herein, as well as in the Motion itself, the Court should grant summary judgment in favor of Defendants on all remaining claims. Plaintiff has woefully failed to meet its burden of producing competent evidence of damages resulting from the alleged wrongful conduct. Here, like the plaintiff in *Rancho Pescado*, Plaintiff seeks future profits damages premised on revenues generated from its entire 2019 hemp harvest, despite no conclusive evidence that the harvest was salable. Plaintiff ignores its risk under the Joint Venture Agreement and asks for speculative damages as if sales of Plaintiff's hemp were guaranteed. They were not. Plaintiff's other damage theories are no better. Plaintiff seeks expenses it incurred to grow the hemp before Plaintiff even knew Defendants. Plaintiff also seeks a host of belatedly disclosed nonsensical damage theories like the loss of Plaintiff's unnamed friend's investment of approximately $300,000 into an undefined "hemp-product line" that somehow "fell apart."

This half-baked case should not proceed. It would be a waste of time and resources to prepare this matter for a jury trial only to have Plaintiff ask the jury to award pie in the sky damages based on nothing but conjecture and speculation. Summary judgment should be awarded to Defendants.

DATED this 9th day of June, 2026.

**WARNER ANGLE HALLAM
JACKSON & FORMANEK PLC**

By  */s/ Peter J. Foster*
Sandra E. Portney
Peter J. Foster
2555 East Camelback Road, Suite 800
Phoenix, Arizona 85016
*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 9th day of June, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system, and that on said date a copy was delivered electronically via the CM/ECF filing system to:

Robert T. Mills
rmills@millsandwoods.com
Sean A. Woods
swoods@millsandwoods.com
Mills + Woods Law, PLLC
docket@millsandwoods.com
5055 N 12th St., Ste. 101
Phoenix, AZ 85014
*Attorneys for Plaintiff*

*/s/ C. Toledo*